UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO GIL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>S. SPAULDING, et al.,<br><br>　　　　　Defendants. | No. 2:16-cv-0587 GEB KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

     Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. On July 13, 2017, defendants filed a motion for summary judgment. As discussed below, the motion should be granted on the grounds that plaintiff failed to exhaust his administrative remedies.

II. Background

     Plaintiff alleges that defendants Green and Spalding failed to protect plaintiff, in violation of the Eighth Amendment, from the extortion by three different inmates from September 17, 2014, through April 15, 2015. (ECF No. 1 at 5.) Specifically, plaintiff alleges that during a unit classification committee, he told defendant Spalding that two inmates were extorting plaintiff since San Quentin Reception, and asked to be moved to segregated housing. (ECF No. 1 at 3.)

1

Plaintiff alleges defendant Spalding refused because plaintiff had an "R" suffix on his jacket. (Id.) Plaintiff alleges that he did not discuss the alleged extortion with defendant Green because defendant Green was alerting inmates as to what other inmates had sex offenses, including plaintiff, but plaintiff alleges defendant Green allowed inmate Fleshman to beat or extort plaintiff and other inmates with sex offenses. (ECF No. 1 at 4.)

On July 13, 2017, defendants filed a motion for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies. Defendants request that in the event that the court finds a genuine issue of material fact exists as to the exhaustion of administrative remedies, the court hold a hearing to make a final determination on exhaustion.

Plaintiff failed to timely file an opposition, and on August 22, 2017, was directed to file an opposition within thirty days. On September 14, 2017, plaintiff filed an opposition. On September 19, 2017, defendants filed a reply. On November 28, 2017, defendants provided additional documentary evidence in response to the court's November 7, 2017 further briefing order.

III. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on July 13, 2017 (ECF No. 43-6), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

IV. Undisputed Facts[1]

1. Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and from about September 10, 2014, to April 15, 2015, was housed at High Desert State Prison ("HDSP"). (ECF No. 1.)

2. Both defendants were employed by the CDCR; defendant Spalding was a correctional counselor and defendant Green was a correctional officer, both assigned to work at HDSP from

---

[1] For purposes of summary judgment, the undersigned finds these facts are undisputed, unless otherwise indicated.

4

1 │ September 10, 2014, through April 15, 2015. (ECF No. 1 at 2-3.)

2 │     3. Plaintiff submitted an Inmate Appeal CDCR 602 dated August 8, 2015.[2] (ECF No. 43-3 (Declaration of D. Clark ("Clark Decl.") at ¶ 14.)

    4. The HDSP Appeals Office received plaintiff's appeal on August 10, 2015. (Clark Decl. at ¶ 14.)

    5. The Appeals Coordinator assigned the Appeal Log No. HDSP 15-02123 to Plaintiff's appeal. (Clark Decl. at ¶ 14.)

    6. Appeal Log No. HDSP 15-02123 was classified as a staff complaint, and the first level of review was bypassed. (Clark Decl. at ¶ 15.)

    7. The second level of review partially granted Appeal Log No. HDSP 15-02123 on August 17, 2015, in that an investigation was being conducted by the Office of Internal Affairs. (Clark Decl. at ¶ 11, Ex. C.)

    8. Appeals Coordinator Clark declares that the second level of review was mailed to plaintiff on August 18, 2015, completing the second level of review. (Clark Decl. at ¶ 17.) Plaintiff declares he did not receive the second level review until September 28, 2015.

    9. Plaintiff dated the submission of his appeal to the Office of Appeals for the third level of review September 29, 2015. (ECF No. 43-5 (Declaration of M. Voong ("Voong Decl.") at ¶ 10.)

    10. The Office of Appeals received Plaintiff's appeal on October 5, 2015. (Voong Decl. at ¶ 10.)

    11. The third level of review cancelled plaintiff's appeal as untimely on November 24, 2015. (Voong Decl. at ¶ 10.)

    12. The Corcoran State Prison ("CSPC") Appeals Office received an appeal from plaintiff

---

[2] In his appeal, plaintiff stated that his allegations were based on incidents from September 10, 2014, to April 15, 2015. Despite his transfer away from HDSP in April of 2015, plaintiff did not file his initial appeal until August 8, 2015. (ECF No. 43-3 at 9.) Plaintiff claimed he did not file the appeal until after July 27, 2015, when he spoke with the offices of Internal Affairs and the Inspector General (id.), and the first level appeal was not rejected as untimely.

dated December 6, 2015.³ (ECF No. 43-4 (Declaration of M. Oliveira ("Oliveira Decl.") at ¶ 11.) The appeal concerned the cancellation of Appeal Log No. HDSP 15-02123 and was assigned Appeal Log No. CSP C-3-15-07285. (Oliveira Decl. at ¶¶ 11-12.)

    13. On December 10, 2015, the CSPC Appeals Office screened Appeal Log No. CSPC-3-15-07285 and informed plaintiff he needed to submit it to the Office of Appeals as it challenged a third level review cancellation decision. (Oliveira Decl. at ¶ 13, Ex. C.)

    14. The Office of Appeals received Appeal Log No. CSPC-3-15-07285, and assigned it Appeal Log No. OOA-15-04211 on December 24, 2015. (Voong Decl. at ¶ 11.)

    15. The third level of review denied Appeal Log No. OOA-15-04211 on February 24, 2016. (Voong Decl. at ¶ 11.)

    16. The third level of review found plaintiff did not present sufficient evidence of a legitimate reason for failing to timely submit his appeal.⁴ (Voong Decl. at ¶ 11, Ex. C.)

    17. The Office of Appeals did not receive or accept any other appeals regarding the allegations raised by plaintiff against defendants Green and Spalding. (Voong Decl. at ¶ 12.)

V. <u>Exhaustion of Administrative Remedies</u>

    A. <u>Exhaustion Standards</u>

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general

---

³ Plaintiff claimed he did not receive the second level response until September 28, 2015, not August 18, 2015 as CCII L. Lopez stated in her response, but he did not mention the late receipt in his request for third level review because he "didn't want to chance [his] appeal being denied for bringing up a separate issue." (ECF No. 43-5 at 11.)

⁴ The third level decision found that plaintiff's claim that the Appeals Coordinator incorrectly identified the date the appeal was returned to him was not supported because the second level review was completed on August 17, 2015, and the appeals coordinator identified the date the appeal was received by the appeals office (August 18, 2015), and forwarded to the plaintiff (August 18, 2015). (ECF No. 1 at 9.) The reviewer found that it was "unlikely that the incorrect date was documented in two separate places as alleged by [plaintiff]." (<u>Id.</u>)

circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Woodford, 548 U.S. at 90. The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. See Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93. "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison [or jail] grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88).

In California, prisoners may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal. Code Regs. tit. 15, § 3084.7. Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the CDCR. Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3). Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services.

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision,

in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, §§ 3084.2(a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." Bock, 549 U.S. at 204, 216. In Albino, the Ninth Circuit agreed with the underlying panel's decision[5] "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),] should provide the template for the burdens here." Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (hereafter "Albino"). A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 747 F.3d at 1172; Draper v. Rosario, 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate did not meet his burden when he failed to identify any actions prison staff took that impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to comply with the administrative remedies process). The ultimate burden of proof, however, remains with the defendant. Id.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. See Albino, 747 F.3d at 1172-73. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

---

[5] See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012). The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low." Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process. Id. at 1032.

Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (prisoner not required to proceed to third level where appeal granted at second level and no further relief was available).

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

B. Discussion

1. Did plaintiff exhaust?

Here, it is undisputed that (a) CDCR has a grievance process; and (b) plaintiff did not receive a third level review on the merits of his claim (ECF No. 43-5 at 3, 7). Such undisputed facts establish that plaintiff did not exhaust his administrative remedies prior to filing this action. Thus, the burden shifts to plaintiff to come forward with evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

2. Were the remedies available?

The Supreme Court recently reiterated that "all inmates must now exhaust all available remedies," and district courts must apply this statutory requirement. Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). Thus, there is no "special circumstances" exception to the PLRA's rule of exhaustion. Id. That said, the PLRA does provide one textual exception by its use of the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Id., quoting Booth, 532 U.S. at 737-38. The Court identified three circumstances that can render a prison or jail grievance process unavailable, but noted "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted).

> First, an administrative procedure is unavailable when . . .it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. . . . And finally, [a grievance process is rendered unavailable] when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Ross, 136 S. Ct. at 1859-60.  For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable.  Albino, 747 F.3d at 1172-73; see also McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable.").

The Ninth Circuit has recognized that administrative remedies may be rendered effectively unavailable if prison officials improperly screen out an inmate appeal.  Sapp, 623 F.3d at 822-23.  To satisfy this exception to the exhaustion requirement, a plaintiff must show "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Id. at 823-24.  See also Nunez, 591 F.3d at 1224-26 (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff, 422 F.3d at 940 (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).  Plaintiff bears the burden of demonstrating that the administrative remedies were rendered unavailable to him through no fault of his own.  Sapp, 623 F.3d at 822-23.

Here, the instant motion turns on whether plaintiff's administrative remedies were rendered unavailable by a purported delay in his receipt of the second level review.  Appeal Log No. HDSP 15-02123 reflects that the second level review was completed on August 17, 2015, and received by the appeals coordinator "AC" on August 18, 2015, and mailed to plaintiff on August 18, 2015.  (ECF No. 56-2 at 6.)

Defendants adduce evidence that the second level review issued on August 17, 2015. (ECF No. 43-3 at 12.)  The appeals coordinator Clark declares that the second level review was mailed to plaintiff on August 18, 2015.  (ECF No. 43-3 at 4.)  In addition, Clark declares that any delay in processing mail in August of 2015 would have been recorded "in order for an appeal not to be canceled as untimely," and no such delay was recorded.  (ECF No. 43-3 at 4.)  Further,

Appeals Coordinator M. Chappuis declares that when an appeal response is completed and the inmate is housed at another institution, the appeal response is sent to the mailroom with an envelope addressed to the receiving appeals office, and the mailroom supervisor must process incoming mail within seven days. (ECF No. 56-2 at 2.) Although no separate daily log is kept regarding delays in mail to the inmate appeals office, Chappuis declares that any delays would be noted on the appeal within the comment section where the appeals office stamps the date or receipt and makes any other pertinent notes. (Id.) Further, Chappuis declares that review of Appeal Log No. HDSP 15-02123 reveals no record of a delay in processing mail in August of 2015. (Id., citing ECF No. 56-2 at 4-6.)

In opposition,[6] plaintiff declares, under penalty of perjury, that "[o]n September 28, 2015, [he] received the second level of review of the 602 appeal . . . and mailed it to the third level of review the following day." (ECF No. 53 at 1.) Although plaintiff did not raise the issue of the late delivery in his Appeal Log No. HDSP 15-02123, he did appeal the cancellation of his third level grievance on the issue of untimeliness, objecting that he received the second level appeal response late.

However, other than his brief declaration, plaintiff adduces no other facts or evidence to support his declaration that he received the second level appeal response late. Unlike the plaintiff in Thorns v. Ryan, 2008 WL 544398, *4 (S.D. Cal. Feb. 26, 2008), plaintiff adduced no evidence demonstrating he made inquiries as to the status of his second level appeal, or that when he submitted his belated request for third level review, he explained that he had only recently received the second level review. Indeed, in his request for third level review, plaintiff did not address any issue concerning an alleged belated receipt of the second level review, despite the appeal form clearly noting that the second level review was completed on August 17, 2015, and mailed to plaintiff on August 18, 2015. (ECF No. 1 at 15.) Plaintiff provided no declaration from a witness attesting to the alleged late delivery. Had plaintiff noted his alleged late receipt of the

---

[6] Although his opposition is three pages, the second page bears only his signature, handwritten name and CDCR number, and the third page is his proof of service by mail. (ECF No. 53.) The actual opposition totals only six lines of handwritten text. (ECF No. 53 at 1.)

11

second level review in his request for third level review, prison staff would have been able to investigate such purported delay at that time.

In his appeal of the cancellation, plaintiff claimed he did not mention his late receipt of the second level review because he "didn't want to chance [his] appeal being denied for bringing up a separate issue." (ECF No. 43-5 at 11.) However, because inmates are required to file appeals within thirty days, timeliness is a key issue relevant to all claims challenged in the grievance process, and was highly pertinent information plaintiff should have included in his request for third level review. Although plaintiff argued in his appeal of the cancellation that the merits of his claim should trump Lopez's "mistake or the delivery of the second level response," (id.), in this court's experience, prison officials understandably cancel appeals that are untimely without regard to the merits of the underlying claim.

Moreover, unlike the prisoners in Thorns or Sanchez v. Penner, 2008 WL 544591 (E.D. Cal. Feb. 26, 2008), plaintiff was not transferred during the pendency of his appeals. Rather, by the time plaintiff filed his initial appeal, he was no longer housed at HDSP, but was housed at CSPC, and plaintiff remained housed at CSPC throughout the appeal process, so no transfers interfered with timely mail delivery. In addition, none of the HDSP employees cited in plaintiff's appeal were physically in a position to delay the receipt of plaintiff's mail at CSPC.

The undersigned finds that plaintiff failed to rebut Clark's declaration that any delay in processing mail in August of 2015 would have been recorded, and no such delay was recorded. Thus, plaintiff fails to demonstrate that his failure to timely exhaust was excused.[7] Therefore, defendants are entitled to summary judgment based on plaintiff's failure to timely exhaust his administrative remedies through the third level of review.

Accordingly, plaintiff has failed to demonstrate that he should be excused from exhausting administrative remedies. Plaintiff failed to carry his burden to demonstrate that his request for third level review was improperly cancelled as untimely. Therefore, the undersigned recommends that the pending motion be granted on the grounds that plaintiff failed to exhaust his

---

[7] Accordingly, the undersigned has determined that an evidentiary hearing would not be beneficial in deciding this issue.

administrative remedies prior to filing the instant action.  Under the PLRA, plaintiff's failure to pursue and exhaust his administrative remedies mandates dismissal of his action without prejudice.  See Wyatt, 315 F.3d at 1120 (the proper remedy for failure to exhaust nonjudicial remedies is dismissal without prejudice).

VI.  Conclusion

    IT IS HEREBY RECOMMENDED that:

    1. Defendants' motion for summary judgment (ECF No. 43) be granted; and

    2. This action be dismissed without prejudice.

    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 26, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/gil0587.msj.fte